Joseph H. Harrington
Acting United States Attorney
Eastern District of Washington
Tyler H.L. Tornabene
Daniel Hugo Fruchter
Assistant United States Attorneys
Post Office Box 1494
Spokane, WA 99210-1494
Telephone:  (509) 353-2767

# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF WASHINGTON

_____

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No.: |
| | ) |
| RICK T. GRAY and | ) **COMPLAINT** |
| GRAY FARMS & CATTLE CO. LLC. | ) |
| | ) **JURY TRIAL REQUESTED** |
| Defendants | ) |
| | ) |
| | ) |
| | ) |
| | ) |

_____

## UNITED STATES' COMPLAINT

1.     The United States brings this action against Defendant RICK T. GRAY, individually, and a company he owned and/or controlled at all relevant times, Defendant GRAY FARMS & CATTLE CO. LLC, for treble damages and penalties pursuant to the False Claims Act, 31 U.S.C. §§ 3729-3733, for civil penalties pursuant to the Financial Institutions Reform and Recovery Enforcement Act ("FIRREA") 12

UNITED STATES' COMPLAINT - 1

U.S.C. §1833a, and for damages under the common law theories of unjust enrichment, and payment by mistake.  Defendants RICK T. GRAY and GRAY FARMS & CATTLE CO. LLC, knowingly made and used false records and statements material to the United States Department of Agriculture (USDA), and falsely and fraudulently claimed losses to their wheat crops resulting in hundreds of thousands of dollars in fraudulently-obtained crop insurance indemnity payments.

2.      From at least April 30, 2015, through at least February 28, 2019, Defendants RICK T. GRAY and GRAY FARMS & CATTLE CO. LLC, engaged in a fraudulent scheme whereby, at least as to crop years 2015 and 2016, they knowingly and repeatedly concealed harvested wheat production and sales of tens of thousands of bushels of wheat, which they surreptitiously sold for hundreds of thousands of dollars and then falsely and fraudulently concealed from the United States.  By hiding insured wheat, largely through hidden and undisclosed deliveries and sales, Defendants RICK T. GRAY and GRAY FARMS & CATTLE CO. LLC, were able to manufacture the appearance of, and falsely claim, substantial wheat crop losses in support of their false and fraudulent insurance claims.  Defendants RICK T. GRAY and GRAY FARMS & CATTLE CO. LLC, falsely and fraudulently claimed, because of the supposed losses, hundreds of thousands of dollars in crop insurance payments, which Defendant RICK T. GRAY, and the entities he owned and controlled, including Defendant GRAY FARMS & CATTLE CO. LLC, received, and which amounts were ultimately borne by the USDA thereby causing hundreds of thousands of dollars in loss to the taxpayers of the United States.

3.      The Defendants' fraudulent scheme used the interstate wires and the mails and affected a federally insured financial institutions, Columbia State Bank.  As part of their scheme to fraudulently obtain federally reinsured crop insurance indemnity payments, the Defendants, using the interstate wires, attempted to fraudulently prevent Columbia State Bank, a valid creditor of Defendant GRAY FARMS & CATTLE CO., from obtaining any portion of a specific crop insurance

UNITED STATES' COMPLAINT - 2

indemnity payment as obligated.  In addition, once the Defendants' fraudulent scheme was detected, one of the entities owned and controlled by Defendant RICK T. GRAY, Gray Land and Livestock LLC, filed for bankruptcy, thereby affecting a federally insured financial institution, Columbia State Bank, who had extended millions of dollars in credit to Defendant RICK T. GRAY's company Gray Land & Livestock LLC and was left with over $3.5 million in bankruptcy claims against that company rather than full and timely payments.

## I.    JURISDICTION AND VENUE

4.    This action arises under the False Claims Act, 31 U.S.C. §§ 3729 -3733, FIRREA, 12 U.S.C. § 1833a, and common law.  This Court has subject matter jurisdiction pursuant to 31 U.S.C. § 3732(a) and 28 U.S.C. §§ 1331, 1345 and 1355. The Court may exercise personal jurisdiction over the Defendants RICK T. GRAY and GRAY FARMS & CATTLE CO. LLC, because they reside and transact business in this District, and because they committed proscribed acts in this District.

5.    Venue lies in this District pursuant to 31 U.S.C. § 3732(a) and 28 U.S.C. § 1391(b) and (c), as the place where Defendants RICK T. GRAY and GRAY FARMS & CATTLE CO. LLC, reside and where a substantial part of the events or omissions giving rise to the claims occurred.

## II.    PARTIES

6.    Plaintiff in this action is the United States of America.

7.    The United States Department of Agriculture (USDA) is a cabinet-level executive agency of the United States whose mission includes focusing on farm production and conservation by implementing programs designed to mitigate the significant risks of farming through crop insurance services, conservation programs, and technical assistance, to the nation's farmers and ranchers.  As part of its statutory responsibilities, USDA is responsible for the federal crop insurance program which it administers through the Federal Crop Insurance Corporation (FCIC), a wholly owned government corporation managed by USDA's Risk Management Agency (RMA).

Congress first authorized federal crop insurance in the 1930s along with other initiatives to help agriculture recover from the combined effects of the Great Depression and the Dust Bowl.

8.      In 1938, Congress created the FCIC to carry out the program. Through the federal crop insurance program, approved insurance providers sell and service federal crop insurance products to America's farmers and ranchers.  The USDA RMA, through the FCIC, reinsures, through standard reinsurance agreements, the loss indemnities paid by approved insurance providers to their insureds on qualifying crop insurance policies.

9.      At all times relevant to this Complaint, the USDA RMA had a standard reinsurance agreement with Rural Community Insurance Company, also known as Rural Community Insurance Services, (herein "RCIS"), the crop insurer for the entities Defendant RICK T. GRAY owned and controlled, including Defendant GRAY FARMS & CATTLE CO. LLC, between 2013 and 2016.

10.      At all times relevant to this Complaint, Defendant RICK T. GRAY was a resident of the Eastern District of Washington with wheat farming operations in Klickitat County, Washington, located in the Eastern District of Washington. At all times relevant Defendant RICK T. GRAY, through various entities he owned and/or controlled, including Defendant GRAY FARMS & CATTLE CO., sought, and received federally reinsured crop insurance for his wheat farming operations through crop insurer RCIS.  According to USDA's Farm Services Agency's records in 2014, 2015, and 2016 Defendant RICK T. GRAY, through various entities he owned or controlled, including Defendant GRAY FARMS & CATTLE CO., LLC, held the largest amount of insured wheat acreage in Klickitat County, Washington, a county that averaged close to 100 wheat farms in each of those years.  Defendant RICK T. GRAY is the owner, operator, and sole governor of Gray Land and Livestock LLC (herein sometimes referred to as "Gray Land").

11.     Defendant GRAY FARMS & CATTLE CO. LLC, is a limited liability company incorporated in Washington State.  At all times relevant to this Complaint Defendant GRAY FARMS & CATTLE CO. LLC had its principal place of business and conducted its farming operations in the Eastern District of Washington.  At times relevant to this Complaint Defendant RICK T. GRAY was the manager of Defendant GRAY FARMS & CATTLE CO., LLC, (herein sometimes referred to as "Defendant GRAY FARMS") a company owned at relevant times by his father.  At times relevant to this Complaint, including during crop years 2015 and 2016, Defendant RICK T. GRAY also had power of attorney for his father, the former owner of Defendant GRAY FARMS, and could sign legal documents, including those related to federally reinsured crop insurance policies and loss claims, on his father's behalf.  Currently, Defendant RICK T. GRAY is the owner, operator, and sole governor of Defendant GRAY FARMS.

## III.    RELEVANT STATUTORY AND REGULATORY BACKGROUND
**The False Claims Act**

12.     Originally enacted in the 1860s to combat rampant fraud against the Union Army during the Civil War, the False Claims Act, 31 U.S.C. §§ 3729-3733, is the primary tool with which the United States combats false claims and fraud against the Government and protects the federal fisc.  *U.S. ex rel. Newsham v. Lockheed Missiles and Space Co., Inc.*, 722 F.Supp. 607, 608 (N.D. Cal. 1989) (*quoting* 36 R. Tomes, The Fortunes of War, Harper's New Monthly Magazine 228 (July 1864) ("For sugar [the government] often got sand; for coffee, rye; for leather, something no better than brown paper; for sound horses and mules, spavined beasts and dying donkeys; and for serviceable muskets and pistols the experimental failures of sanguine inventors, or the refuse of shops and foreign armories.").  The Supreme Court has held that the False Claims Act's provisions must be construed broadly to reach "all types of

1  fraud, without qualification, that might result in financial loss to the Government."

2  *United States v. Neifert-White*, 390 U.S. 228, 232, 88 S.Ct. 959 (1968).

3      13.    The False Claims Act provides, in pertinent part, that any person who:

4  (A)    knowingly presents, or causes to be presented, a false or fraudulent claim
       for payment or approval; [or]

5

6  (B)    knowingly makes, uses, or causes to be made or used, a false record or
       statement material to a false or fraudulent claim . . .

7

8      is liable to the United States Government [for statutory damages and such
       penalties as are allowed by law].

9

10  31 U.S.C. § 3729(a)(1)-(2) (2006), as amended by 31 U.S.C. § 3729(a)(1)(A)-(B)
    (2010).

11

12      14.    The False Claims Act defines "knowingly" as follows:

13  (1)    the terms knowing and knowingly –
    (A)    mean that a person, with respect to information –

14

15      (i)  has actual knowledge of the information;

16      (ii)  acts in deliberate ignorance of the truth or falsity of the
       information; or

17

18      (iii)  acts in reckless disregard of the truth or falsity of the
       information; and

19

20  (B)  require no proof of specific intent to defraud[.]

21  31 U.S.C. § 3729(b) (2006), as amended by 31 U.S.C. § 3729(b)(1) (2010).

22

23      15.    The False Claims Act provides that a person is liable to the United States

24  Government for three times the amount of damages that the Government sustains

25  because of the act of that person, plus additional civil penalties for each violation.  31

26  U.S.C. § 3729(a)(1).

27

28

UNITED STATES' COMPLAINT - 6

**The Financial Institutions Reform and Recovery Enforcement Act (FIRREA)**

16.     The Financial Institutions Reform, Recovery and Enforcement Act, 12 U.S.C. § 1833a ("FIRREA"), was enacted by Congress as part of a comprehensive legislative plan to reform and strengthen the banking system and certain federal programs. Toward that end, FIRREA authorizes civil enforcement for violations of enumerated predicate federal criminal offenses, including making false statements or reports for the purpose of influencing, in any way, the Federal Crop Insurance Corporation or a company it reinsures, in violation of 18 U.S.C. § 1014, and Bank Fraud in violation of 18 U.S.C. § 1344.  12 U.S.C. § 1833a(c)(1).

17.     One of FIRREA's stated purposes is to provide "enhanced enforcement powers and increase criminal and civil money penalties for crimes of fraud against federal institutions and depositors."  H.R. Rep. 101-54(I), 101st Cong., 1st Sess. 1989 at 18; *reprinted at* 1989 U.S.C.C.A.N. 86 at 118.

18.     In addition to authorizing the Attorney General to recover civil penalties from whomever violates certain predicate offenses, such at 18 U.S.C. § 1014 and 18 U.S.C. § 1344, FIRREA also authorizes the Attorney General to seek civil penalties for violations of Mail Fraud and Wire Fraud, 18 U.S.C. § § 1341, 1343, "affecting a federally insured financial institution."  12 U.S.C. § 1833(a)(c)(2).

19.     For purposes of the violations for which FIRREA civil penalties may be sought: (a) the term "financial institution" includes federally insured financial institutions, as well as branches and agencies of foreign banks; and (b) the term "federally insured financial institution" includes banks whose deposits are insured by the Federal Deposit Insurance Corporation and credit unions whose accounts are insured by the National Credit Union Share Insurance Fund.  18 U.S.C. § 20(1), (2) & (9).  As used herein, these terms shall have the meaning attributed to them for purposes of FIRREA, as set forth above.

20.     FIRREA's penalty provisions provide that, depending on the timing of the violation and the assessment thereof, the United States may recover civil money penalties of up to either $1,100,000 or $2,048,915 per violation, or for a continuing violation, up to $1,100,000 per day or $5,500,000, whichever is less, or up to $2,048,915 per day or $10,244,577, whichever is less. *See* 12 U.S.C. §§ 1833a(b)(1), (2); 28 C.F.R. § 85.3 and § 85.5. The statute further provides that the penalty can exceed these limits to permit the United States to recover the amount of any gain to the person committing the violation, or the amount of the loss to a person other than the violator stemming from such conduct, up to the amount of the gain or loss. *See* 12 U.S.C. § 1833a(b)(3).

## III.     BACKGROUND

**FCIC-Backed Multi-Peril Crop Insurance (MPCI)**

21.     One of the most common insurance products offered to farmers by FCIC-approved insurance providers is Multi-Peril Crop Insurance (MPCI).  MPCI policies offer protection for the insured crop (also referred to as "production") against numerous causes of loss including drought, excessive moisture, hail, frost, wind, insects, and disease.

22.     In order to obtain MPCI coverage, an applicant must complete and sign a MPCI application and submit it to their insurance company by the applicable sales closing date. The application must contain all required information including, but not limited to the selection of the applicable options and endorsements, state, county, crop, level of coverage, percent of the projected price and plan of insurance. The applicant must certify that all entries made on the application are true and complete. The application is subject to acceptance by the insurance company based on the representations made by the applicant. In return for payment of the premium and subject to all the provisions in the policy and endorsements, the insurance company agrees to provide crop insurance coverage and issues an MPCI policy to the insured.

The MPCI policy is a continuous policy and will remain in effect until cancelled in writing.

23.     Under an MPCI policy, each year the insured  must certify on an Acreage Report the location, date of planting, number of acres planted, and the insured's interest or share in the insured crop. The insured must sign the Acreage Report certifying that all the information is entirely accurate and submits it to the insurance company. This acreage report data is used to calculate the amount of insurance coverage (often referred to as "the guarantee"), what precisely is being insured, and the premium that is due and payable.  The Acreage Report requires the insured to disclose all acreage of an insured crop, whether insurable or not insurable.  The Acreage Report must be signed by the insured certifying that the information thereon is correct and accurate to the best of the insured's knowledge and belief.  The Acreage Report certification by the insured includes an acknowledgement by the insured that failure to report completely and accurately may result in various sanctions including criminal and civil penalties under a number of applicable federal statutes.  The explicitly listed federal statutes on the Acreage Report certification include the False Claims Act and 18 U.S.C. § 1014.

24.     Revenue Protection (RP) policies are a type of MPCI policies that insure producers against yield losses due to natural causes such as drought, excessive moisture, hail, wind, frost, insects, and disease, and revenue losses caused by a change in the harvest price from the projected price. The insured farmer, known as the producer, selects the amount of average yield he or she wishes to insure; from 50-75 percent (in some areas up to 85 percent). The projected price and the harvest price are 100 percent of the amounts determined in accordance with the Commodity Exchange Price Provisions and are based on daily settlement prices for certain futures contracts. The amount of insurance protection is based on the greater of the projected price or the harvest price. If the harvested production, plus any appraised or stored production,

multiplied by the harvest price is less than the amount of insurance protection, the producer is paid an indemnity based on the difference.

25.    When a properly insured crop is damaged by an insurable cause of loss covered by the insured farmer's MPCI policy, the insured farmer files a Notice of Loss which is transmitted to the insurance company. Upon receipt of the Notice of Loss, the insurance company assigns a loss adjuster to inspect the crop and determine the amount of loss.  To receive an indemnity payment the insured farmer is obligated, under the terms of the crop insurance policy, to disclose both insured and uninsured crop including crops planted or harvested that year and stored production from previous years.

26.    Specifically, as applicable to the MPCI policies held by Gray Farms and Gray Land specified herein, Section 14 of the Common Crop Insurance Policy (Basic Provision), captioned "Duties in the Event of Damage, Loss, Abandonment, Destruction, or Alternative Use of Crop or Acreage," provides in part, at section 14(e)(4), that in order for an insured farmer to receive any indemnity the insured farmer must provide "A complete harvesting, production, and marketing record of each insured crop by unit including separate records showing same information for production from any acreage not insured."  That section, at 14(e)(5), goes on to state that "Failure to comply with any requirement contained in section 14(e)(4) will result in denial of the claim. . . ."

27.    Consequently, as part of the loss adjustment process on an MPCI policy after a Notice of Loss has been filed by the insured , the insured is required to provide the loss adjuster with settlement sheets from the grain elevators where any production is sold during the applicable crop year, whether that production was insured or not. Settlement sheets show the amount of production sold, the interest in the crop and the price paid to the insured. The loss adjuster will also gather load tickets used by the insured to show the originating location of the production, the amount of the production, and the identification of the owner of the production. If the production,

whether insured or not, is stored on the farm, the loss adjuster will perform bin measurements to determine how much grain is in the bin. If the production has not been harvested, the loss adjuster will perform field appraisals to determine the amount of crop produced in the field.

28.    After the filing of a Notice of Loss, and based on the information provided by the insured thereafter, the insurance loss adjuster completes a Production Worksheet which functions as the insurance claim form which applies for and requests payment of a loss indemnity. In order to be eligible for any loss indemnity payment, the insured must sign the Production Worksheet certifying that all the information thereon is true and complete, including but not limited to, the insured's interest or share percentage in the insured crop, the cause of loss, and the amount of harvested and appraised and stored production.  The certification statement on the Production Worksheet signed by the insured states:

> I certify that the information provided above, to the best of my knowledge, to be true and complete and that it will be used to determine my loss, if any, to my insured crops. I understand that this Production Worksheet and supporting papers are subject to audit and approval by the company. I also understand that this crop insurance is subsidized and reinsured by the Federal Crop Insurance Corporation, an agency of the United States. False claims or false statements made on a matter within the jurisdiction of the Federal Crop Insurance Corporation may subject the maker to criminal and civil penalties under various Federal statutes including the provisions of 18 U.S.C. §1006, §1014; 7 U.S.C. §1506; 31 U.S.C. §3729, §3730, §3801, §3812.

This is the certification statement that Defendant RICK T. GRAY signed on each of the specific production worksheets referenced herein at, *inter alia*, paragraphs 74, 75, 77, 78, and 84, *infra*.

29.    After the Production Worksheet is completed and signed by the loss adjuster and the insured certifying that the insurance claim is correct, it is sent to the crop insurance company to calculate the amount of loss and the resulting amount of

UNITED STATES' COMPLAINT - 11

indemnity. Through this process, the insurance company then pays an indemnity to the insured for the loss on the insured crop.

30.     The USDA RMA has standard reinsurance agreements with Approved Insurance Providers (AIPs) that obligate the USDA as a reinsurer to the AIPs when those providers issue federal crop insurance policies to insured entities. One of the reinsurance agreement's core financial principles is stop-loss. A stop-loss means once certain contractual thresholds are met, all losses beyond that threshold are the financial responsibility of the FCIC.

31.     Once an AIP transmits the policy and ostensibly qualifying claim data to the FCIC for a loss indemnity for a specific policy on a specific crop year, the FCIC promptly (within 3 business days) funds the full requested indemnity amount via an escrow account, which allows for proper cash flow, so producers are paid losses quickly.  The AIP, in turn, pays the producer the ostensibly legitimate and valid loss indemnity amount. In addition, at monthly intervals, the FCIC and AIPs settle up by transferring any net amount owed figuring premium owed (including FCIC paid premium subsidies), indemnities paid, and escrow paid per the reinsurance agreement. Further, on an annual basis, a full settlement is completed between the FCIC and its AIPs that also incorporates administration and operating expense subsidies.

## V.    DEFENDANTS' FRAUDULENT SCHEME TO HIDE WHEAT PRODUCTION AND MAKE FALSE AND FRAUDULENT CROP INSURANCE CLAIMS

32.     On or about June 30, 2009, Defendant GRAY FARMS & CATTLE CO. LLC., obtained a federally reinsured MPCI policy (MPCI Policy #46-951-989150) for its wheat farming operations in Klickitat County, Washington, from Rural Community Insurance Company, also known as Rural Community Insurance Services, (herein "RCIS") an FCIC-approved insurance provider.

UNITED STATES' COMPLAINT - 12

33.    On or about January 30, 2012, Defendant RICK T. GRAY, on behalf of his company Gray Land and Livestock, LLC, obtained a federally reinsured MPCI policy (MPCI Policy #46-951-136889) for Gray Lands' wheat farming operations in Klickitat County, Washington, from RCIS, an FCIC approved insurance provider.

**Crop Year 2013**

34.    For crop year 2013, Defendant RICK T. GRAY, on behalf of both Defendant GRAY FARMS & CATTLE CO. LLC, and Gray Land and Livestock LLC, made crop insurance loss claims on MPCI Policy #46-951-989150 and MPCI Policy #46-951-136889, respectively.

35.    As to each of those alleged losses Defendant RICK T. GRAY claimed that the wheat production for each of the insureds, Gray Land and Defendant GRAY FARMS, was deficient and claimed that all wheat production for both Gray Land and Defendant GRAY FARMS had been sold and delivered to Horse Heaven Grain LLC (herein sometimes referred to as "Horse Heaven Grain"), other than a small additional amount in a pup trailer.  As part of the loss adjustment process on both MPCI policies for crop year 2013, Defendant RICK T. GRAY represented that there was no additional farm stored or home stored wheat production, and that there had been no sales other than to Horse Heaven Grain.

36.    As a result of the representation of Defendant RICK T. GRAY on behalf of  Defendant GRAY FARMS & CATTLE CO. LLC, and Gray Land and Livestock LLC, during the loss claim process on their respective MPCI policies for crop year 2013, RCIS paid $48,021.00 in indemnity to Defendant GRAY FARMS and $252,360.00 in indemnity to Gray Land.  Those amounts were paid to RCIS by the FCIC as reinsurance per the standard reinsurance agreement between RCIS and USDA RMA.

**Crop Year 2014**

37.    For crop year 2014, Defendant RICK T. GRAY, on behalf of both Defendant GRAY FARMS & CATTLE CO. LLC, and Gray Land and Livestock

LLC, made crop insurance loss claims on MPCI Policy #46-951-989150 and MPCI Policy #46-951-136889, respectively.

38.    As to each of those alleged losses Defendant RICK T. GRAY claimed that the wheat production for each of the insureds, Gray Land and Defendant GRAY FARMS, was deficient and claimed that all wheat production for both Gray Land and Defendant GRAY FARMS had been sold and delivered to Horse Heaven Grain.  As part of the loss adjustment process on both MPCI policies for crop year 2014, Defendant RICK T. GRAY represented that there was no additional farm stored or home stored wheat production, and that there had been no sales other than to Horse Heaven Grain.

39.    As a result of the representation of Defendant RICK T. GRAY on behalf of  Defendant GRAY FARMS & CATTLE CO. LLC and Gray Land and Livestock LLC, during the loss claim process on their respective MPCI policies for crop year 2014, RCIS paid $295,399.00 in indemnity to Defendant GRAY FARMS and $434,354.00 in indemnity to Gray Land.  Those amounts were paid to RCIS as reinsurance by the FCIC per the standard reinsurance agreement between RCIS and USDA RMA.

**Crop Year 2015**

40.    By on or about the acreage reporting date for crop year 2015, July 15, 2015, Defendant RICK T. GRAY and Defendant GRAY FARMS & CATTLE CO. LLC, submitted a signed Acreage Report to RCIS under MPCI Policy #46-951-989150 obtaining coverage for Defendant GRAY FARMS' wheat production for crop year 2015.  In that Acreage Report Defendant RICK T. GRAY certified to RCIS that all wheat to be harvested by Defendant GRAY FARMS in 2015 would be insured and that there was to be no uninsured 2015 wheat production.  The data contained in that Acreage Repot was submitted to RCIS through the interstate wires from the Eastern District of Washington.

UNITED STATES' COMPLAINT - 14

41.    On or about March 9, 2015, Defendant RICK T. GRAY and Defendant GRAY FARMS & CATTLE CO. LLC transferred all rights to any indemnity under MPCI Policy #46-951-989150 for crop year 2015 from Defendant GRAY FARMS to its creditor Columbia State Bank, an FDIC insured financial institution, through a RCIS Assignment of Indemnity Application.

42.    On or about April 30, 2015, Defendant RICK T. GRAY, acting on behalf of Gray Land and Livestock LLC, submitted a signed Acreage Report to RCIS under MPCI Policy #46-951-136889 obtaining coverage for Gray Lands' wheat production for crop year 2015.  In that Acreage Report Defendant RICK T. GRAY certified to RCIS that all wheat to be harvested by Gray Land in 2015 would be insured and that there was to be no uninsured 2015 wheat production.  The data contained in that Acreage Repot was submitted to RCIS through the interstate wires from the Eastern District of Washington.

43.    On or about July 21, 2015, Defendant RICK T. GRAY, on behalf of Gray Land, caused a Notice of Loss on crop year 2015 under MPCI Policy #46-951-136889 to be submitted to RCIS.  The data contained in that Notice of Loss was transmitted to RCIS through the interstate wires from the Eastern District of Washington.

44.    Also on or about July 21, 2015, Defendant RICK T. GRAY and Defendant GRAY FARMS caused a Notice of Loss for crop year 2015 under MPCI Policy #46-951-989150 to be submitted to RCIS.  The data contained in that Notice of Loss was transmitted to RCIS through the interstate wires from the Eastern District of Washington.

45.    On or about September 21, 2015, notwithstanding the previous transfer of all rights to any indemnity under MPCI Policy #46-951-989150 for crop year 2015, made on or about March 9, 2015, from Defendant GRAY FARMS to its creditor Columbia State Bank, Defendant RICK T. GRAY and Defendant GRAY FARMS fraudulently attempted to transferred all rights to any indemnity under MPCI Policy #46-951-989150 for crop year 2015 from Defendant GRAY FARMS, to Defendant

UNITED STATES' COMPLAINT - 15

RICK T. GRAY's company Gray Land & Livestock LLC, through an RCIS Transfer of Coverage and Right to an Indemnity form which Defendant RICK T. GRAY caused to be falsely and fraudulently backdated to January 1, 2015, a date prior to the previous transfer to Columbia State Bank. The falsity of the back dated date of the purported transfer of indemnity rights to Defendant GRAY FARMS to a date prior to the valid transfer date of March 9, 2015, was material to RCIS and Columbia State Bank as it had the natural tendency to, and was capable of, influencing RCIS regarding the payment of all or part of any indemnity under MPCI Policy # 46-951-989150 for crop year 2015 to Columbia State Bank in satisfaction, in whole or partial, of the valid and lawful debt owed it by Defendant GRAY FARMS.

46.     Defendant RICK T. GRAY's and Defendant GRAY FARMS' falsely and fraudulently backdated RCIS Transfer of Coverage and Right to an Indemnity form dated September 21, 2015, was the Defendants' attempt to fraudulently prevent Columbia State Bank from lawfully collecting a debt owed to it by Defendant GRAY FARMS.

47.     The data from Defendant RICK T. GRAY's and Defendant GRAY FARMS' fraudulently backdated RCIS Transfer of Coverage and Right to an Indemnity form was transmitted to RCIS through the interstate wires from the Eastern District of Washington.

48.     On or about September 30, 2015, as part of the loss adjustment process under MPCI Policy #46-951-989150 for crop year 2015, for Defendant GRAY FARMS, Defendant RICK T. GRAY and Defendant GRAY FARMS falsely and fraudulently represented and certified to RCIS, on a production worksheet, that all insured wheat harvested in 2015 for Defendant GRAY FARMS had been sold to Horse Heaven Grain LLC. The data contained in that production worksheet was transmitted to RCIS through the interstate wires from the Eastern District of Washington.

49.     Also, on or about September 30, 2015, as part of the loss adjustment process under MPCI Policy #46-951-136889, crop year 2015, for Gray Land and Livestock LLC, Defendant RICK T. GRAY falsely and fraudulently represented and certified to RCIS, on a production worksheet, that all insured wheat harvested in 2015 for Gray Land was sold to Horse Heaven Grain LLC.  The data contained in that production worksheet was transmitted to RCIS through the interstate wires from the Eastern District of Washington.

50.     In fact, in 2015 Defendant RICK T. GRAY and/or Defendant GRAY FARMS & CATTLE CO. LLC, sold and delivered over 35,000 bushels of hidden and undisclosed wheat to multiple granaries, other than Horse Heaven Grain, for a total of at least $184,744.71 in hidden and undisclosed production and sales.  During that same time period Defendant RICK T. GRAY's and Defendant GRAY FARMS & CATTLE CO. LLC's disclosed wheat sales and deliveries to Horse Heaven Grain were for 21,411.32 bushels of wheat for approximately $130,000, almost all of which went to creditors of Gray Land and Defendant GRAY FARMS.

51.     Defendant RICK T. GRAY's and Defendant GRAY FARMS' hidden and undisclosed wheat deliveries and sales included deliveries and sales to Tri Cities Granary LLC between approximately July 23 and August 10, 2015, on at least 12 separate occasions.  During that time Defendant RICK T. GRAY and Defendant GRAY FARMS delivered and sold over 19,000 bushels of wheat produced by Defendant GRAY FARMS and/or Gray Land to Tri Cities Granary LLC.   Further, Defendant RICK T. GRAY and Defendant GRAY FARMS & CATTLE CO. LLC delivered, and sold more than 4,300 additional bushels of wheat produced by Defendant GRAY FARMS and/or Gray Land to Tri Cities Granary LLC, on at least three additional separate occasions, between approximately November 20 and November 23, 2015.  In 2015 Defendant RICK T. GRAY and Defendant GRAY FARMS & CATTLE CO. LLC sold and delivered hidden and undisclosed wheat, produced by Defendant GRAY FARMS and/or Gray Land, to Tri Cities Granary LLC

under the following names: "Gray Farms, Rick T" and "Rick T. Gray".  As a result, Tri Cities Granary LLC paid a total of $142,374.99 to Defendant RICK T. GRAY and/or Defendant GRAY FARMS for the crop year 2015 hidden and undisclosed wheat.

52.     Defendant RICK T. GRAY's and Defendant GRAY FAMRS' hidden and undisclosed wheat sales also included deliveries and sales to AgriNorthwest on or about July 15, 2015 and again on or about July 17, 2015.  On or about those dates, Defendant RICK T. GRAY and Defendant GRAY FARMS delivered and sold over 2,800 bushels of wheat produced by Defendant GRAY FARMS and/or Gray Land to AgriNorthwest under Defendant GRAY FARMS' name.  As a result, AgriNorthwest paid a total of $16,766.29 to Defendant RICK T. GRAY and/or Defendant GRAY FARMS for the crop year 2015 hidden and undisclosed wheat.

53.     Defendant RICK T. GRAY's and Defendant GRAY FARMS' hidden and undisclosed wheat sales also included deliveries and sales to Mid Columbia Producers Inc. between approximately August 11 and August 31, 2015, on at least six separate occasions.   On or between those dates, Defendant RICK T. GRAY and Defendant GRAY FARMS delivered and sold over 9,200 bushels of wheat produced by Defendant GRAY FARMS and/or Gray Land to Mid Columbia Producers Inc. under "Rick T. Gray, Gray Farms & Cattle Company".  As a result, Mid Columbia Producers Inc. paid a total of $25,603.43 to "Rick T. Gray and Columbia State Bank Gray Farms and Cattle Company" for the crop year 2015 hidden and undisclosed wheat.

54.     Defendant RICK T. GRAY and Defendant GRAY FARMS did not disclose the existence of any of this production, or any of these deliveries or sales, or of any uninsured wheat that might explain the undisclosed production, deliveries, and sales, during the loss adjustment process, on production worksheets or otherwise, to RCIS as required by the terms of MPCI Policy #46-951-989150 (Defendant GRAY FARMS' policy) and MPCI Policy #46-951-136889 (Gray Land's policy).  Instead,

Defendant RICK T. GRAY and Defendant GRAY FARMS knowingly and fraudulently concealed and materially omitted the majority of the wheat production of Gray Land and Defendant GRAY FARMS, over 35,000 bushels of wheat, that Defendant RICK T. GRAY and/or Defendant GRAY FARMS sold to Tri Cities Granary LLC, AgriNorthwest, and Mid Columbia Producers Inc.   Defendant RICK T. GRAY and Defendant GRAY FARMS did this in order to fraudulently claim insurance payments to which they were not entitled, by fraudulently and falsely claiming losses to wheat crops that did not occur, and by falsely and fraudulently understating the production of Defendant GRAY FARMS and Defendant RICK T. GRAY's company Gray Land for crop year 2015.

55.    Had Defendant RICK T. GRAY's and Defendant GRAY FARMS' hidden and undisclosed wheat sales and deliveries been known during the loss adjustment process on MPCI Policy #46-951-989150, Defendant GRAY FARMS would not have been eligible for any indemnity loss payment for crop year 2015.

56.    As a result of Defendant RICK T. GRAY's and Defendant GRAY FARMS' knowing and materially false and fraudulent statements and omissions, RCIS paid loss indemnity in the amount of $122,272, on MPCI Policy #46-951-989150 for crop year 2015, directly to Defendant RICK T. GRAY's company, Gray Land and Livestock LLC, through the United States Postal Service or through private or commercial interstate carrier to the Eastern District of Washington.  This amount was not paid to the insured entity, Defendant GRAY FARMS, based on Defendant RICK T. Gray's and Defendant GRAY FARMS' previous fraudulent transfer of indemnity rights from Defendant GRAY FARMS to Gray Land detailed at paragraphs 45-47, *supra*.  The loss indemnity amount was applied in part to the unpaid premium amounts on MPCI Policy #46-951-989150 then owed.  RCIS would not have paid any indemnity on MPCI Policy #46-951-989150 for crop year 2015 had it known that in fact Defendant RICK T. GRAY and Defendant GRAY FARMS had delivered and

sold hidden and undisclosed wheat production, including over 35,000 bushels of wheat totaling at least $184,744.71 in sales revenue.

57.    As a result of Defendant RICK T. GRAY's and Defendant GRAY FARMS' false and fraudulent statements and omissions, on October 2, 2015, RCIS, pursuant to its Standard Reinsurance Agreement with RMA, submitted, through the interstate wires, a false and fraudulent claim for payment to the USDA for reinsurance of the indemnity RCIS paid for crop year 2015 on MPCI Policy #46-951-989150, less any amount of premium still owed, in the amount of $94,353.00.  On October 2, 2015, the USDA, through the FCIC, as administered by RMA, paid $94,353.00 in reinsurance to RCIS through the interstate wires on that claim for reinsurance for MPCI Policy #46-951-989150, crop year 2015.  Had the USDA known that RCIS's claim for reinsurance was based on the materially false and fraudulent statements and omissions of Defendant RICK T. GRAY and Defendant GRAY FARMS it would not have paid RCIS's resulting claim for reinsurance.

58.    Similarly, had the Defendants' hidden and undisclosed wheat sales and deliveries been known during the loss adjustment process on MPCI Policy #46-951-136889, Gray Land and Livestock LLC, would not have been eligible for any indemnity loss payment for crop year 2015.

59.    As a result of Defendant RICK T. GRAY's false and fraudulent statements and omissions, RCIS paid loss indemnity in the amount of $417,756 on MPCI Policy #46-951-136889 directly to Defendant RICK T. GRAY's company, Gray Land and Livestock LLC, through the United States Postal Service or private or commercial interstate carrier to the Eastern District of Washington.  The loss indemnity amount was applied in part to the unpaid premium amounts on MPCI Policy #46-951-136889 then owed.  RCIS would not have paid any indemnity on MPCI Policy #46-951-136889 for crop year 2015 had it known that in fact Defendant RICK T. GRAY and Defendant GRAY FARMS had delivered and sold hidden and

undisclosed wheat production, including over 35,000 bushels of wheat totaling at least $184,744.71 in sales revenue.

60.    As a result of Defendant RICK T. GRAY's false and fraudulent statements and omissions, on October 8, 2015, RCIS, pursuant to its Standard Reinsurance Agreement with RMA, submitted, through the interstate wires, a false and fraudulent claim for payment to the USDA for reinsurance of the indemnity RCIS paid for crop year 2015 on MPCI Policy #46-951-136889, less any amount of premium still owed, in the amount of $384,453.00 through the interstate wires.  On October 8, 2015, the USDA through the FCIC, as administered by RMA, paid $384,453.00 in reinsurance to RCIS on that claim for reinsurance for MPCI Policy #46-951-136889, crop year 2015, through the interstate wires.  Had the USDA known that RCIS's claim for reinsurance was based on the materially false and fraudulent statements and omissions of Defendant RICK T. GRAY, it would not have paid RCIS's resulting claim for reinsurance.

61.    All totaled for crop year 2015, Defendant RICK T. GRAY and Defendant GRAY FARMS & CATTLE CO. LLC defrauded RCIS out of a total of at least $540,028 in crop insurance indemnity payments for crop year 2015 ($478,806 of which was paid through indemnity checks and $61,222 of which was applied to unpaid premium amounts then owing), all of which was borne by the USDA through its reinsurance agreement with RCIS.

**Crop Year 2016**

62.    On or about September 30, 2015, Defendant RICK T. GRAY and Defendant GRAY FARMS, canceled MPCI Policy No. 46-951-989150 in writing.

63.    Based on data submitted by Defendant GRAY FARMS to the USDA Farm Services Administration, Defendant GRAY FARMS had no wheat farming operations in Klickitat County, Washington in crop year 2016.

64.    By on or about the acreage reporting date for crop year 2016, July 15, 2016, Defendant RICK T. GRAY, acting on behalf of Gray Land and Livestock LLC,

submitted a signed Acreage Report to RCIS under MPCI Policy #46-951-136889 obtaining coverage for Gray Lands' wheat production for crop year 2016. In that Acreage Report Defendant RICK T. GRAY certified to RCIS that all wheat to be harvested by Gray Land in 2016 would be insured and that there was to be no uninsured 2016 wheat production. The data in that Acreage Report was transmitted to RCIS through the interstate wires from the Eastern District of Washington.

65.     On or between June 28, 2016, and August 8, 2016, Defendant RICK T. GRAY, acting on behalf of Gray Land and Livestock LLC, caused notices of loss to be submitted to RCIS for crop year 2016 on MPCI Policy #46-951-136889. The data in those notices of los were transmitted to RCIS through the interstate wires from the Eastern District of Washington.

66.     On or about October 13, 2016, as part of the loss adjustment process under MPCI Policy #46-951-136889, crop year 2016, for Gray Land and Livestock LLC, Defendant RICK T. GRAY falsely and fraudulently represented to RCIS on a production worksheet that all insured wheat harvested in 2016 for Gray Land was sold to Horse Heaven Grain LLC and Mid Columbia Producers Inc. and that there was no "home stored" wheat production. The data in that production worksheet was transmitted to RCIS through the interstate wires from the Eastern District of Washington.

67.     In fact, contrary to his false and fraudulent representations to RCIS for crop year 2016 on MPCI Policy #46-951-136889, Defendant RICK T. GRAY had, through various entities he owned or controlled, over 26,000 bushels of stored wheat production.

68.     Further, contrary to his false and fraudulent representations to RCIS for crop year 2016 on MPCI Policy #46-951-136889, Defendant RICK T. GRAY, sold and delivered over 17,000 bushels of hidden and undisclosed wheat to Tri Cities Granary between approximately June 20, 2016 and November 29, 2016, under the name "RT Farms."

UNITED STATES' COMPLAINT - 22

69.    On October 17, 2016, RCIS notified Defendant RICK T. GRAY that it was denying the loss claim for crop year 2016 on MPCI Policy #46-951-136889 because Defendant RICK T. GRAY had "failed to provide a complete harvesting, production, and marketing record," as required under Section 14 of the Basic Provisions of MPCI Policy #46-951-136889.  RCIS further notified Defendant RICK T. GRAY at that time that pursuant to its standard reinsurance agreement with USDA RMA, that based on RCIS' "discovery of unreported wheat production," it had reported Defendant RICK T. GRAY's insurance claim to USDA RMA's Western Regional Compliance Office.

70.    On or about March 6, 2017, USDA RMA notified Defendant RICK T. GRAY that he and his company, Gray Land and Livestock LLC, were ineligible to obtain federally reinsured crop insurance based on failure to pay premiums.

71.    On or about February 28, 2019, one of Defendant RICK T. GRAY's companies, Gray Land and Livestock LLC., declared bankruptcy in the Eastern District of Washington.  Columbia State Bank is a creditor of Gray Land and Livestock LLC with multiple unpaid claims in the bankruptcy proceeding totaling over $3.5 million for credit extended to Gray Land and Livestock LLC's farming operations starting as early as June of 2013.

## VI.    FALSE CLAIMS SUBMITTED AND CAUSED TO BE SUBMITTED BY DEFENDANTS

72.    As described, and discussed above in paragraphs 1 through 71, the following false and fraudulent claim for payment was knowingly submitted and caused to be submitted by Defendant RICK T. GRAY and Defendant GRAY FARMS & CATTLE CO. LLC to the USDA in violation of 31 U.S.C. § 3729(a)(1)(A):

-    RCIS claim for reinsurance in the amount of $94,353.00, for crop year 2015 on MPCI Policy #46-951-989150, submitted to the USDA on October 2, 2015, and paid by the USDA, through the FCIC, on October 2, 2015, in the amount of $94,353.00.

73.     As described, and discussed above in paragraphs 1 through 71, the following false and fraudulent claim for payment was knowingly submitted and caused to be submitted by Defendant RICK T. GRAY to the USDA in violation of 31 U.S.C. § 3729(a)(1)(A):

- RCIS claim for reinsurance in the amount of $384,453.00, for crop year 2015 on MPCI Policy #46-951-136889, submitted to the USDA on October 8, 2015, and paid by the USDA, through the FCIC, on October 8, 2015, in the amount of $384,453.00.

## VII.   FALSE RECORDS OR STATEMENTS KNOWINGLY MADE, USED, AND CAUSED TO MADE AND USED BY DEFENDANTS IN VIOLATION OF THE FALSE CLAIMS ACT

74.     As described, and discussed above in paragraphs 1 through 71, the following record or statement was knowingly made, used, and caused to made and used by Defendant RICK T. GRAY and Defendant GRAY FARMS & CATTLE CO. LLC, and was material to the corresponding false or fraudulent claim for payment to the USDA, in violation of 31 U.S.C. § 3729(a)(1)(B):

| Record/Statement | Corresponding False Claim |
|---|---|
| Production Worksheet for crop year 2015, MPCI Policy #46-951-989150, dated September 30, 2015, certified by Defendant RICK T. GRAY falsely and fraudulently representing, *inter alia*, that all wheat production for Gray Farms & Cattle Co, LLC was delivered and sold to Horse Heaven Grain LLC. | RCIS claim for reinsurance in the amount of $94,353.00, for crop year 2015 on MPCI Policy #46-951-989150, submitted to the USDA on October 2, 2015, and paid by the USDA, through the FCIC, on October 2, 2015, in the amount of $94,353.00. |

75.     As described, and discussed above in paragraphs 1 through 71, the

following record or statement was knowingly made, used, and caused to made and used by Defendant RICK T. GRAY and was material to the corresponding false or fraudulent claim for payment to the USDA, in violation of 31 U.S.C. § 3729(a)(1)(B):

| Record/Statement | Corresponding False Claim |
|---|---|
| Production Worksheet for crop year 2015, MPCI Policy #46-951-136889, dated September 30, 2015, certified by Defendant RICK T. GRAY falsely and fraudulently representing, *inter alia*, that all wheat production for Gray Land and Livestock, LLC was delivered and sold to Horse Heaven Grain LLC. | RCIS claim for reinsurance in the amount of $384,453.00, for crop year 2015 on MPCI Policy #46-951-136889, submitted to the USDA on October 8, 2015, and paid by the USDA, through the FCIC, on October 8, 2015, in the amount of $384,453.00 |

## VIII.  FALSE RECORDS OR STATEMENTS KNOWINGLY MADE IN VIOLATION OF THE FINANCIAL INSTITUTIONS REFORM AND RECOVERY ENFORCEMENT ACT (FIRREA)

76.    Beginning at a date unknown, but by at least April 30, 2015, and continuing at least through February 28, 2019, Defendants RICK T. GRAY and GRAY FARMS & CATTLE CO. LLC., within the Eastern District of Washington and elsewhere, as described more fully in paraphs 1 through 71, engaged in a scheme to defraud in violation of 18 U.S.C. § 1014; 18 U.S.C. § 1341; 18 U.S.C. § 1343; and/or 18 U.S.C. § 1344(2), all in violation of 12 U.S.C. § 1833a.

### A. Defendants' Violations of 18 U.S.C. § 1014, Making False Statements and Reports Influencing the FCIC

77.    Beginning at a date unknown, but by at least April 30, 2015, and continuing at least through February 28, 2019, Defendants RICK T. GRAY and GRAY FARMS & CATTLE CO. LLC., within the Eastern District of Washington

and elsewhere, as described more fully in paraphs 1 through 71, knowingly made false statements and reports for the purpose of influencing, in any way, the Federal Crop Insurance Corporation or a company it reinsures, here RCIS, including upon the following application in violation of 12 U.S.C. § 1833a(c)(1) and 18 U.S.C. § 1014:

    a. Production Worksheet for crop year 2015, MPCI Policy #46-951-989150, dated September 30, 2015, certified by Defendant RICK T. GRAY falsely and fraudulently representing, *inter alia*, that all wheat production for Defendant GRAY FARMS was delivered and sold to Horse Heaven Grain LLC.

78. Beginning at a date unknown, but by at least April 30, 2015, and continuing at least through February 28, 2019, Defendant RICK T. GRAY, within the Eastern District of Washington and elsewhere, as described more fully in paraphs 1 through 71, knowingly made false statements and reports for the purpose of influencing, in any way, the Federal Crop Insurance Corporation or a company it reinsures, here RCIS, including upon the following applications in violation of 12 U.S.C. § 1833a(c)(1) and 18 U.S.C. § 1014:

    a. Production Worksheet for crop year 2015, MPCI Policy #46-951-136889, dated September 30, 2015, certified by Defendant RICK T. GRAY falsely and fraudulently representing, *inter alia*, that all wheat production for Gray Land and Livestock, LLC was delivered and sold to Horse Heaven Grain LLC; and

    b. Production Worksheet for crop year 2016, MPCI Policy #46-951-136889, dated October 13, 2016, certified by Defendant RICK T. GRAY falsely and fraudulently representing, *inter alia*, that all wheat production for Gray Land and Livestock, LLC was delivered and sold to Horse Heaven Grain LLC and Mid Columbia Producers and that Defendant RICK T. GRAY had no "home stored" wheat production.

**B.  Defendants' Violations of 18 U.S.C. §§ 1341 & 1343, Mail and Wire Fraud**

79.     Beginning at a date unknown, but by at least April 30, 2015, and continuing at least through February 28, 2019, Defendants RICK T. GRAY and GRAY FARMS & CATTLE CO. LLC., within the Eastern District of Washington and elsewhere, as described more fully in paraphs 1 through 71, knowingly and with the intent to defraud, devised, participated in, and executed a scheme to defraud the United States Department of Agriculture, the Federal Crop Insurance Corporation, and approved insurance provider Rural Community Insurance Company, also known as Rural Community Insurance Services, (herein "RCIS"), of federally reinsured crop insurance loss indemnity payments, by means of material false and fraudulent pretenses, representations, and promises and the concealment of material facts.

80.     For purposes of executing this scheme to defraud, the Defendants, RICK T. GRAY and GRAY FARMS & CATTLE CO. LLC, deposited and caused to be deposited correspondence for delivery by the United States Postal Service or a private or commercial interstate carrier, and transmitted and caused to be transmitted writings by means of wire communications in interstate and foreign commerce.  In particular, under MPCI Policy #46-951-989150 and MPCI Policy #46-951-136889, the Defendants, respectively, as insureds and/or acting on behalf of insureds, were required to provide information to establish or modify coverage to their agent. This information was captured on specific documents that were required to be provided in accordance with the applicable basic provisions, crop provisions, special provisions and procedures. Specifically, the insured and agent are required to sign the application, production history, acreage report, and any power of attorney or assignment of indemnity.  The agent then enters all of this information into RCIS's CIMax System.  In the case of MPCI Policy #46-951-989150 and MPCI Policy #46-951-136889 for crop years 2015 and 2016, this process resulted in the transmission of the information on all applications, production histories, acreage reports, and

assignments of indemnity, from Washington State to RCIS, headquartered in Anoka, MN, by use of the interstate wires.

81.    Regarding loss claims by the insured, the agent enters that information into the RCIS Notice of Loss System, which, in the case of MPCI Policy #46-951-989150 and MPCI Policy #46-951-136889 for crop years 2015 and 2016, resulted in the transfer of that information from Washington State to RCIS, headquartered in Anoka, MN, by use of the interstate wires.  RCIS transmits, through the interstate wires, the data in CIMax and its Notice of Loss System to RMA according to the Standard Reinsurance Agreement (SRA) Appendix III PASS requirements applicable for the given reinsurance year. In the event of a loss claim, upon receipt of a notice of loss in the RCIS Notice of Loss System, the claim documents, including production worksheets, are signed and the claim data is captured in RCIS's claim systems and also transmitted to RMA according to the SRA Appendix III PASS requirements, using the interstate wires.  RCIS submits its claims for reinsurance to the USDA through the interstate wires.  Regarding the payments of reinsurance by the USDA to RCIS, the disbursement of funds via electronic funds transfer (EFT) is made using the interstate wires from New York to RCIS in Minnesota.

82.    Regarding indemnity payments, the indemnity check and summary of loss is provided to the insured by RCIS.  The loss indemnity checks provided by RCIS for crop year 2015 on MPCI Policy #46-951-989150 and MPCI Policy #46-951-136889 were sent from RCIS's headquarters in Anoka, MN, to Washington State using the United States Postal Service or a private or commercial interstate carrier.

83.    In fraudulently obtaining hundreds of thousands of dollars in federally reinsured crop insurance indemnities, Defendants RICK T. GRAY and GRAY FARMS & CATTLE CO. LLC deceived at least one financial institution that had extended credit to Defendant GRAY FARMS and/or to Defendant RICK T. GRAY and/or other entities he owned and/or controlled, including Gray Land and Livestock LLC., into believing that these debtors were and continued to be credit worthy and

were not basing hundreds of thousands of dollars in revenue on an ongoing scheme to defraud the USDA and its approved insurance provider RCIS. This deception was material to the financial institution. Specifically, Columbia State Bank had extended over $3.5 million of credit to Defendant RICK T. GRAY's company, Gray Land and Livestock LLC, prior to the detection in 2016 of the fraud scheme detailed herein. Subsequently, on March 6, 2017, USDA RMA notified Defendant RICK T. GRAY that both he and his company, Gray Land and Livestock LLC, were ineligible to obtain federally reinsured crop insurance and subsequent to that, on February 28, 2019, Defendant RICK T. GRAY caused Gray Land and Livestock LLC to file for bankruptcy in U.S. Bankruptcy Court for the Eastern District of Washington. The bankruptcy filing left Columbia State Bank, one of Gray Land and Livestock LLC's creditors, with a claim in bankruptcy, rather than full and timely payments, for over $3.5 million.

84.    Accordingly, for the purpose of executing the scheme to defraud, the Defendants RICK T. GRAY and GRAY FARMS & CATTLE CO. LLC, deposited and caused to be deposited materials for delivery by the United States Postal Service or a private or commercial interstate carrier, and transmitted and caused to be transmitted writings by means of wire communications in interstate and foreign commerce, affecting at least one federally insured financial institution, Columbia State Bank, in violation of 18 U.S.C. 1341, Mail Fraud, and/or 18 U.S.C. § 1343, Wire Fraud, all in violation of 12 U.S.C. § 1833a(c)(2). Examples include, but are not limited, to the following:

| On or about | Defendant(s) | Description | Mailing or Use of Interstate Wires |
|---|---|---|---|
| 4/30/15 | RICK T. GRAY | Acreage Report data for MPCI Policy #46-951-136889 obtaining coverage for Gray | RCIS CIMax System via the interstate wires. |

UNITED STATES' COMPLAINT - 29

| | | Lands' wheat production for crop year 2015. | |
|---|---|---|---|
| 7/15/15 | RICK T. GRAY and GRAY FARMS | Acreage Report data for MPCI Policy #46-951-989150 obtaining coverage for Defendant GRAY FARMS' wheat production for crop year 2015. | RCIS CIMax System via the interstate wires. |
| 7/21/15 | RICK T. GRAY and GRAY FARMS | Notice of Loss for crop year 2015 under MPCI Policy #46-951-989150. | RCIS Notice of Loss System via the interstate wires. |
| 7/21/15 | RICK T. GRAY | Notice of Loss for crop year 2015 under MPCI Policy #46-951-136889. | RCIS Notice of Loss System via the interstate wires. |
| 9/21/15 | RICK T. GRAY and GRAY FARMS | RCIS Transfer of Coverage and Right to an Indemnity form data. | RCIS CIMax System via the interstate wires. |
| 9/30/15 | RICK T. GRAY and GRAY FARMS | Production Worksheet for crop year 2015, MPCI Policy #46-951-989150, dated September 30, 2015, certified by Defendant RICK T. GRAY falsely and fraudulently representing, *inter alia*, that all wheat production for | RCIS Notice of Loss System and/or RCIS CIMax System via the interstate wires. |

| | | Defendant GRAY FARMS was delivered and sold to Horse Heaven Grain LLC | |
|---|---|---|---|
| 9/30/15 | RICK T. GRAY | Production Worksheet for crop year 2015, MPCI Policy #46-951-136889, dated September 30, 2015, certified by Defendant RICK T. GRAY falsely and fraudulently representing, *inter alia*, that all wheat production for Gray Land and Livestock, LLC was delivered and sold to Horse Heaven Grain LLC | RCIS Notice of Loss System and/or RCIS CIMax System via the interstate wires. |
| 10/1/15 | RICK T. GRAY and GRAY FARMS | RCIS Check No. 02053442 in the amount of $94,353.00 for Claim No. 2254807 on MPCI Policy #48-951-989150, Crop Year 2015. | Sent from RCIS's headquarters in Anoka, MN, to Washington State using the United States Postal Service or a private or commercial interstate carrier. |
| 10/2/15 | RICK T. GRAY and GRAY FARMS | RCIS claim for reinsurance in the amount of $94,353.00, for crop year 2015 on MPCI Policy #46-951-989150, submitted to the USDA | RCIS submission to USDA via the interstate wires. |

| 10/2/15 | RICK T. GRAY and GRAY FARMS | USDA reinsurance payment to RCIS, in the amount of $94,353.00, for crop year 2015 on MPCI Policy #46-951-989150. | EFT from USDA to RCIS via the interstate wires. |
|---|---|---|---|
| 10/7/15 | RICK T. GRAY | RCIS Check No. 02054739 in the amount of $384,453.00 for Claim No. 2258517 on MPCI Policy #46-951-136889, Crop Year 2015. | Sent from RCIS's headquarters in Anoka, MN, to Washington State using the United States Postal Service or a private or commercial interstate carrier. |
| 10/8/15 | RICK T. GRAY | RCIS claim for reinsurance in the amount of $384,453.00, for crop year 2015 on MPCI Policy #46-951-136889, submitted to the USDA. | RCIS submission to USDA via the interstate wires. |
| 10/8/15 | RICK T. GRAY | USDA reinsurance payment to RCIS, in the amount of $384,453.00, for crop year 2015 on MPCI Policy #46-951-136889. | EFT from USDA to RCIS via the interstate wires. |
| 7/15/16 | RICK T. GRAY | Acreage Report data for MPCI Policy #46-951-136889 obtaining coverage for Gray | RCIS CIMax System via the interstate wires. |

| | | Lands' wheat production for crop year 2016 | |
|---|---|---|---|
| Between 6/28/16 and 8/8/16 | RICK T. GRAY | Notices of Loss for crop year 2016 on MPCI Policy #46-951-136889. | RCIS Notice of Loss System via the interstate wires. |
| 10/13/16 | RICK T. GRAY | Production Worksheet for crop year 2016, MPCI Policy #46-951-136889, dated October 13, 2016, certified by Defendant RICK T. GRAY falsely and fraudulently representing, *inter alia*, that all wheat production for Gray Land and Livestock, LLC was delivered and sold to Horse Heaven Grain LLC and Mid Columbia Producers and that Defendant RICK T. GRAY had no "home stored" wheat production | RCIS Notice of Loss System and/or RCIS CIMax System |

## C. Defendants' Violation of 18 U.S.C. § 1344(2), Bank Fraud

85.     Beginning on a date unknown but by at least April 30, 2015, and continuing through February 28, 2019, the Defendants RICK T. GRAY and GRAY FARMS & CATTLE CO. LLC, within the Eastern District of Washington and elsewhere, as described more fully in paragraphs 1 through 71, knowingly and with intent to defraud, carried out a scheme or plan to obtain money or property from

Columbia State Bank, a federally insured financial institution, by making false statements or promises, which the defendants knew were false and which were material.

86.     For purposes of executing this scheme to defraud, the Defendants, RICK T. GRAY and GRAY FARMS & CATTLE CO. LLC, on or about September 21, 2015, fraudulently attempted to transfer all rights to any indemnity under MPCI Policy #46-951-989150 for crop year 2015 from Defendant GRAY FARMS, to Defendant RICK T. GRAY's company, Gray Land & Livestock LLC, through an RCIS Transfer of Coverage and Right to an Indemnity form which Defendant RICK T. GRAY and Defendant GRAY FARMS caused to be falsely and fraudulently backdated to January 1, 2015, a date prior to the previous and valid transfer of indemnity rights under MPCI Policy #46-951-989150 to Columbia State Bank, and which information was submitted to RCIS and had the natural tendency to influence and was capable of influencing RCIS, and therefore Columbia State Bank, to part with any loss indemnity amount or portion thereof paid under MPCI Policy #46-951-989150.

## COUNT I
### Violation of the False Claims Act
### 31 U.S.C. § 3729(a)(1)(A)

87.     The United States repeats and realleges the allegations contained in Paragraphs 1 through 86 above, as if fully set forth herein.

88.     Defendant RICK T. GRAY violated the False Claims Act, 31 U.S.C. § 3729(a)(1)(A) by knowingly presenting and causing to be presented to the USDA false and/or fraudulent claims for payment of reinsurance by the USDA to RCIS for the crop year 2015 indemnity payments made on MPCI Policy #46-951-136889 and MPCI Policy #46-951-989150.

89.     Defendant GRAY FARMS & CATTLE CO. LLC violated the False Claims Act, 31 U.S.C. § 3729(a)(1)(A) by knowingly presenting and causing to be

presented to the USDA false and/or fraudulent claims for payment of reinsurance by the USDA to RCIS for the crop year 2015 indemnity payments made on MPCI Policy #46-951-989150.

90.     The United States paid the false and/or fraudulent claims because of Defendants' acts, and incurred damages as a result.

91.     Pursuant to 31 U.S.C. § 3729(a), Defendant RICK T. GRAY and Defendant GRAY FARMS & CATTLE CO. LLC are liable to the United States Government for a civil penalty for each violation of the False Claims Act committed by Defendants RICK T. GRAY and/or GRAY FARMS & CATTLE CO. LLC, respectively.

92.     Pursuant to 31 U.S.C. § 3929(a), Defendants RICK T. GRAY and GRAY FARMS & CATTLE CO. LLC are jointly and severally liable to the United States for three times the amounts of all damages sustained by the United States because of the Defendants' conduct.

## COUNT II
### Violation of the False Claims Act
### 31 U.S.C. § 3729(a)(1)(B)

93.     The United States repeats and realleges the allegations contained in Paragraphs 1 through 86 above, as if fully set forth herein.

94.     Defendants RICK T. GRAY and GRAY FARMS & CATTLE CO. LLC violated the False Claims Act, 31 U.S.C. § 3729(a)(1)(B) by knowingly making, using, or causing to be made or used, false records or statements that were material to false or fraudulent claims for payment to the USDA, and which claims the United States did pay.

95.     The United States paid the false and/or fraudulent claims because of the Defendants' acts, and incurred damages as a result.

96.     Pursuant to 31 U.S.C. § 3729(a), the Defendants are liable to the United States Government for a civil penalty for each violation of the False Claims Act

committed by Defendant RICK T. GRAY and/or Defendant GRAY FARMS & CATTLE CO. LLC, respectively.

97.     Pursuant to 31 U.S.C. § 3929(a), the Defendants are jointly and severally liable to the United States for three times the amounts of all damages sustained by the United States because of the Defendants' conduct.

**COUNT III**
**Violation of FIRREA**
**False Applications to the FCIC**
**12 U.S.C. § 1833a**
**18 U.S.C. § 1014**

98.     The United States repeats and realleges the allegations contained in Paragraphs 1 through 86 above, as if fully set forth herein.

99.     Each execution and/or attempted execution by or caused by Defendant RICK T. GRAY and/or Defendant GRAY FARMS & CATTLE CO. LLC, by means of knowingly making false statements and/or reports for the purpose of influencing, in any way, the Federal Crop Insurance Corporation or a company it reinsures, here RCIS, as set forth in paragraphs 77 and 78, constitutes a separate violation of 18 U.S.C. § 1014 and, therefore, 12 U.S.C. § 1833a(c)(1). For each such violation, pursuant to 12 U.S.C. § 1833a(b)(1), (2), (3); 28 C.F.R. § 83.5 and/or 28 C.F.R. § 85.5, the United States is entitled, and seeks, to recover a civil money penalty against the defendants in an amount to be assessed by the Court.

**COUNT IV**
**Violation of FIRREA**
**Mail Fraud**
**12 U.S.C. § 1833a**
**18 U.S.C. § 1341**

100.    The United States repeats and realleges the allegations contained in paragraphs 1 through 86, as if fully set forth herein.

101.    Each deposit of an item for delivery by the United States Postal Service

UNITED STATES' COMPLAINT - 36

or a private or commercial interstate carrier by or caused by Defendant RICK T. GRAY and/or Defendant GRAY FARMS & CATTLE CO. LLC, for the purpose of executing the scheme to defraud and to obtain money by means of false and fraudulent representations described in paragraphs 79 through 84 above, constitutes a separate violation of 18 U.S.C. § 1341. Each such violation that affected a federally insured financial institution constitutes a separate violation of 12 U.S.C. § 1833a(c)(2). For each such violation, pursuant to 12 U.S.C. § 1833a(b)(1), (2), (3); 28 C.F.R. § 83.5 and/or 28 C.F.R. § 85.5, the United States is entitled, and seeks, to recover a civil money penalty against the defendants in an amount to be assessed by the Court.

## COUNT V
### Violation of FIRREA
### Wire Fraud
### 12 U.S.C. § 1833a
### 18 U.S.C. § 1343

102.    The United States repeats and realleges the allegations contained in paragraphs 1 through 86, as if fully set forth herein.

103.    Each transmission by or caused by Defendant RICK T. GRAY and/or Defendant GRAY FARMS & CATTLE CO. LLC, by means of wire communication in interstate and foreign commerce for the purpose of executing the scheme to defraud and to obtain money by means of false and fraudulent representations described in paragraphs 79 through 84 above, constitutes a separate violation of 18 U.S.C. § 1343. Each such violation that affected a federally insured financial institution constitutes a separate violation of 12 U.S.C. § 1833a(c)(2). For each such violation, pursuant to 12 U.S.C. § 1833a(b)(1), (2), (3); 28 C.F.R. § 83.5 and/or 28 C.F.R. § 85.5, the United States is entitled, and seeks, to recover a civil money penalty against the defendants in an amount to be assessed by the Court.

//
//
//

## COUNT VI
### Violation of FIRREA
### Bank Fraud
### 12 U.S.C. § 1833a
### 18 U.S.C. § 1344(2)

104.   The United States repeats and realleges the allegations contained in paragraphs 1 through 86, as if fully set forth herein.

105.   Each execution and/or attempted execution by or caused by Defendant RICK T. GRAY and/or Defendant GRAY FARMS & CATTLE CO. LLC for purposes of executing the scheme to obtain money owed by and under the custody and control of financial institutions by means of false and fraudulent representations set forth in paragraphs 85 and 86 above, constitutes a separate violation of 18 U.S.C. § 1344(2) and, therefore of 12 U.S.C. § 1833a(c)(1).  For each such violation, pursuant to 12 U.S.C. § 1833a(b)(1), (2), (3); 28 C.F.R. § 83.5 and/or 28 C.F.R. § 85.5, the United States is entitled, and seeks, to recover a civil money penalty against the defendants in an amount to be assessed by the Court.

## COUNT VII
### For Unjust Enrichment

106.   The United States repeats and realleges the allegations contained in paragraphs 1 through 86, as if fully set forth herein.

107.   By receiving crop insurance indemnity payments, directly or indirectly through his company Gray Land and Livestock LLC., from RCIS for crop year 2015 on MPCI Policy #46-951-136889 and MPCI Policy #46-951-989150, in the total amount of at least $540,028, to which he was not entitled due to his wrongful, improper, and corrupt conduct, and as such amount was reinsured by the USDA in the amount of at least $540,028, Defendant RICK T GRAY has been unjustly enriched and is liable to repay such amounts to the United States.

108.   By receiving crop insurance indemnity payments, directly or indirectly from RCIS for crop year 2015 on MPCI Policy #46-951-989150, in the total amount

of at least $122,272, to which it was not entitled due to its wrongful, improper, and corrupt conduct, and as such amount was reinsured by the USDA in the amount of at least $122,272, Defendant GRAY FARMS & CATTLE CO. LLC has been unjustly enriched and is liable to repay such amounts to the United States.

**COUNT VIII**
**For Payment by Mistake**

109.    The United States repeats and realleges the allegations contained in paragraphs 1 through 86, as if fully set forth herein.

110.    As a result of his conduct, Defendant RICK T. GRAY received payments, directly or indirectly through his company Gray Land and Livestock, LLC, from RCIS for crop year 2015 on MPCI Policy #46-951-136889 and MPCI Policy #46-951-989150, which were reinsured in whole by the USDA and to which Defendant RICK T. GRAY  was not entitled and occurred as a result of mistake of fact of the USDA.

111.    The USDA relied upon its mistake in authorizing and approving payment to RCIS.

112.    Defendant RICK T. GRAY is liable to the United States for the reinsurance amounts paid to RCIS by the United States as a result of this mistake.

113.    As a result of its conduct, Defendant GRAY FARMS & CATTLE CO. LLC received payments from RCIS for crop year 2015 on MPCI Policy #46-951-989150, which were reinsured in whole by the USDA and to which Defendant GRAY FARMS & CATTLE CO. LLC  was not entitled and occurred as a result of mistake of fact of the USDA.

114.    The USDA relied upon its mistake in authorizing and approving payment to RCIS.

115.    Defendant GRAY FARMS & CATTLE CO. LLC is liable to the United States for the reinsurance amounts paid to RCIS by the United States as a result of this mistake.

UNITED STATES' COMPLAINT - 39

## **PRAYER FOR RELIEF**

116.    Plaintiff the United States of America prays for judgment against the Defendant, as follows:

A.    As to Counts I and II under the False Claims Act, 31 U.S.C. § 3729(a), against Defendant RICK T. GRAY and Defendant GRAY FARMS & CATTLE CO. LLC for treble the amount of the United States' single damages to be proven at trial, plus civil penalties as are required by law per violation of the False Claims Act, post-judgment interest, costs, and such other relief as may be necessary and proper;

B.    As to Count III, IV, V, and VI under FIRREA, 12 U.C.C. § 1833a, civil penalties against Defendant RICK T. GRAY and Defendant GRAY FARMS & CATTLE CO. LLC in the maximum amount authorized under 12 U.S.C. § 1833a, and 28 C.F.R. §§ 83.5 and 85.5, to be proven at trial, post-judgment interest, costs, and such other relief as may be necessary and proper:

C.    As to Count VII, unjust enrichment, against Defendant RICK T. GRAY and Defendant GRAY FARMS & CATTLE CO. LLC for the sums by which Defendant RICK T. GRAY and Defendant GRAY FARMS & CATTLE CO. LLC, respectively, have been unjustly enriched, to be proven at trial, plus pre-judgment and post-judgment interest, and costs;

D.    As to Count VIII, payment by mistake, against Defendant RICK T. GRAY and Defendant GRAY FARMS & CATTLE CO. LLC, respectively, for the amounts paid to RCIS by mistake, to be proven at trial, plus pre-judgment and post-judgment interest, and costs; and

//
//
//
//
//

E.      Such other relief as the Court deems just, necessary, and proper.

The United States demands a trial by jury as to all issues so triable.

Respectfully Submitted this 28th day of September, 2021,

Joseph H. Harrington
Acting United States Attorney

_____
Tyler H.L. Tornabene
Daniel Hugo Fruchter
Assistant United States Attorneys
Eastern District of Washington
920 W. Riverside Ave., Suite 340
Spokane, Washington 99201
(509) 353-2767
Tyler.H.L.Tornabene@usdoj.gov

UNITED STATES' COMPLAINT - 41